IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   15-cv-00551-WYD-KMT

FEDERATED MUTUAL INSURANCE COMPANY,

      Plaintiff,

v.

MICHAEL ENRIGHT and
AAA SERVICE PLUMBING, INC.,

      Defendants.

---

## ORDER ON SUMMARY JUDGMENT

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on cross motions for summary judgment on the issue of whether Defendant Michael Enright ["Enright"] is entitled to underinsured motorist ["UIM"] coverage on a commercial policy issued to Enright's company Defendant AAA Insurance Plumbing ["Triple A"].  The Complaint filed by Plaintiff Federal Mutual Insurance Company ["Federated"] seeks a declaratory judgment on this issue. Defendants filed an Answer, Jury Demand, and Counterclaims asserting that Enright is entitled to coverage under the Policy and asserting claims of breach of contract, bad faith breach of insurance contract, and violations of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.

Federated filed its Summary Judgment Motion on July 1, 2015, seeking a judgment that it has no obligation to provide UIM coverage to Enright.  It argues that

Enright does not qualify as an "insured" because at the time of the accident, Enright was not engaged in a business endeavor for Triple A and was not using a "covered auto" as required by the policy.  Instead, Enright was operating his separately owned motorcycle on personal time.  A response was filed in opposition to the summary judgment motion on July 22, 2015, and a reply was filed on August 26, 2015.

Defendants filed a Cross-Motion for Partial Summary Judgment on July 22, 2015, which incorporates their argument in their response to Federated's Summary Judgment motion.  Defendants contend that Enright is entitled to UIM coverage under the Policy. A response to the Cross-Motion for Partial Summary Judgment was filed on September 29, 2014, and a reply was filed on November 4, 2014.  Accordingly, the cross motions for summary judgment are fully briefed.

II.   FACTS

I have cited to the record only when the facts were disputed or where I otherwise thought it was necessary.  I address some of the facts, particularly citations to pertinent policy provisions, in Section III, *infra*.

A.   Federated's Statement of Facts

Enright was involved in a motor vehicle accident on Sunday, August 25, 2013. At the time of the accident, Enright was riding a motorcycle he personally owned.  The accident also involved a vehicle operated by Demetra N. Kayne ["Kayne"].

Kayne's vehicle was insured under a policy issued by GEICO with a per person bodily injury liability limit of $25,000.  Enright's motorcycle was insured under a policy issued to him by State Farm.  The State Farm policy has a UIM limit of $100,000.

-2-

Enright was an officer/owner of Triple A at the time Federated issued a policy to Triple A (along with his daughter Sarah), and is currently Triple A's sole owner.  The Commercial Package Policy issued by Federated to Triple A bears policy number 9052386 and was in effect for the policy period from June 1, 2013 to June 1, 2014 [the "Policy"].  The Policy includes business automobile liability insurance coverage.

The Policy states that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations."  (Pl.'s App. at 6; Defs.' Ex. 2 at FED 0219.)  While Defendants concede this, they deny that it is the only language defining who is an insured under the Policy and who is referred to by the term "You" and "Your" in the Policy.  For example, Defendants assert that the addition of Enright as an individual named insured under the Policy's "Drive Other Car Coverage - Broadened Coverage for Named Individuals" endorsement renders Enright a "Named Insured" under the "Who Is An Insured" Section of the "Colorado Uninsured Motorists Coverage - Bodily Injury" endorsement.  (Defs.' Ex. 2 at FED 0232-33 and FED 0245-46.)

The Common Policy Declarations of the Policy identify the Named Insured as "AAA Service Plumbing, Inc."  (Pl.'s Appx at 00001; Defs.' Ex. 2 at FED 0002.) .Defendants admit this, but deny that this is the only section of the Policy that defines who is an insured, as discussed in the previous paragraph.  It is undisputed that "AAA Service Plumbing, Inc." is designated in the Common Policy Declarations as a "corporation."  (*Id.*)

According to Federated, the Policy does not contain any provision stating that Enright is a "Named Insured" under the Policy, citing ECF 1-1 through ECF 1-5.

-3-

Defendants deny this, stating that the Policy's "Drive Other Car Coverage - Broadened Coverage for Named Individuals" endorsement specifically identifies "Mike Enright" as an individually named insured under the Policy.  (Defs.' Ex. 2 at FED 0245.)

Federated asserts that the Policy defines who qualifies as "insureds" for automobile liability insurance coverage in the "Who Is An Insured" section of the Business Auto Coverage Form, and that it precludes coverage for Enright because he was not driving a "covered auto" owned by Triple A, but a motorcycle he owned individually.  (Pl.'s Appx. at 7-8; Defs.' Ex. 2 at FED 0220-0221.)  Defendants admit that the Policy contains this language relied on by Federated, but deny that it is the only language defining who is insured for automobile liability insurance coverage, as discussed previously.

The Policy also includes an endorsement entitled "Colorado Uninsured Motorists Coverage – Bodily Injury", which states in part that the insurer (Federated) will "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle'."  (Pl.'s Appx. at 9; Defs.' Ex. 2 at FED 0232.)  The term "uninsured motor vehicle" includes a vehicle that is an underinsured motor vehicle.  The  endorsement includes a "Who Is An Insured" provision stating that "If the Named Insured is designated in the Declarations as" as "[a] partnership, limited liability company, corporation or any other form of organization", then "[a]nyone 'occupying' or using a covered 'auto' or a temporary substitute for a covered 'auto'" is covered as an insured.  (Pl.'s Appx. at 10; Defs.' Ex. 2 at FED 0233.)  Defendants admit

that the Policy contains this language, but deny that it is the only language defining who is an insured for UIM coverage.

Defendants point out that Federated omits the section of the "Who Is An Insured" provision in the endorsement providing that "If the Named Insured is designated in the Declarations as . . . An individual", then "[t]he Named Insured and any 'family members'" are insureds.  (Defs.' Ex. 2 at FED 0233.)  Additionally, Defendants assert that the Policy's "Drive Other Car Coverage - Broadened Coverage for Named Individuals" endorsement specifically identifies "Mike Enright" as an individually named insured under the Policy.  (*Id.* at FED 0245.)

It is undisputed that Item Two of the Declarations of the Business Auto Coverage identifies "covered autos" for purposes of the Policy's UIM coverage by reference to symbol "2A".  (Pl.'s Appx. at 3; Defs.' Ex. 2 at FED 0214.)  The Declarations page then refers to form CA-F-93 (the "Uninsured and Underinsured Motorists Limit of Insurance" endorsement) for further information.  (Defs.' Ex. 2 at FED 0214.)  That form is found at page FED 0238 of Defendants' Exhibit 2

It is also undisputed that the Business Auto Policy's Endorsement form CA-F-5 (07-93) provides that symbol 2A means "Owned autos only.  Only those 'autos' you own   * * *.  This includes those 'autos' whose ownership you acquire after the policy begins."  (Pl.'s Appx. at 4-5; Defs.' Ex. 2 at FED 0254.)  Defendants assert, however, that the term "you" includes Enright by virtue of the "Broadened Coverage for Named Individuals" endorsement's addition of Enright as an individually named insured.

Federated issued Commercial Umbrella Liability Policy number 9052386 to Triple A for the policy period from June 1, 2013 to June 1, 2014.   Defendants do not seek to recover UIM coverage benefits under that policy.

B.   <u>Defendants' Additional Facts</u>

Enright purchased the Policy from Federal in approximately May of 2013.  The Policy's Business Auto Coverage Part provides $1,000,000 of liability coverage for "any auto."  Federal does not dispute this, but states that the limit of liability is available only to the extent that a specific claim is covered based on all of the Policy's other terms, provisions, and exclusions.

The Policy's Business Auto Coverage Part declarations page lists Uninsured Motorists ("UM") and Underinsured Motorists ("UIM") coverage for "owned autos only," but refers to an endorsement for the limits:  "SEE CA-F-93."  (Defs.' Ex. 2 at FED 0214.) The declarations page does not show an amount for the UIM limit, but instead states "$ INCLUDED" just below the reference to "SEE CA-F-93" related to UM coverage.  (*Id.* at 0214, *see also* 0238—showing $INCLUDED for UIM coverage "[f]or all directors, officers, partners or owners of the named insured and their 'family members' who qualify as 'insureds' under the WHO IS INSURED of the Uninsured and Underinsured Motorists Coverage attached to this policy. . .").

Defendants refer to the Policy's Liability Coverage Part which states as to "**Coverage**" that "[w]e will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused

by an "accident" and resulting from the ownership, maintenance or use of a covered

"auto."  It states as to "**Who Is An Insured**":

> a.   You for any covered "auto".
> b.   Anyone else while using with your permission
>       a covered "auto" you own, hire, or borrow. . . .
> c.   Anyone liable for the conduct of an "insured"
>       described above but only to the extent of that
>       liability.

(Defs.' Ex. 2 at FED 0220).  Federated denies, however, that this is the only pertinent

part of the Business Auto Coverage Part.

Defendants also cite the Colorado UIM Coverage - Bodily Injury endorsement

which states, "For a covered "auto" licensed or principally garaged in, or "garage"

operations conducted in Colorado, this endorsement modifies insurance provided under

the following: . . .BUSINESS AUTO COVERAGE FORM."  It also states:

> With respect to coverage provided by this endorsement, the provisions of
> the Coverage Form apply unless modified by this endorsement.
>
> * * *
> **Limit of Insurance $ SEE DECLARATIONS  Each "Accident"**
>
> Information required to complete this Schedule, if not shown above, will be
> shown in the Declarations.
>
> **A.   Coverage**
>
> **1.**   We will pay all sums the "insured" is legally
>         entitled to recover as compensatory damages
>         from the owner or driver of an "uninsured motor
>         vehicle."  The damages must result from
>         "bodily injury" sustained by the "insured"
>         caused by an "accident".  The owner's or
>         driver's liability for these damages must result
>         from the ownership, maintenance or use of the
>         "uninsured motor vehicle."

(Defs.' Ex. 2 at FED 0232-0233.)  I address the "**Who Is An Insured**" section of this endorsement below in Section III.  Federated denies that these portions of the policy are material to the pending motions.

Defendants also point to the endorsement in the Policy entitled, "Drive Other Car Coverage - Broadened Coverage for Named Individuals ["Broadened Coverage Endorsement"], which they assert expands the scope of coverage to include the individual named in the Endorsement's Schedule, *i.e.,* Enright.  (Defs.' Ex. 2 at FED 0245.)  Federated denies that the Broadened Coverage Endorsement is material to the pending motions and denies that it generically "expands the scope of coverage to include the individual named in the Endorsement's schedule."  According to Federated, the endorsement expressly states that "it changes only those coverages where a premium is shown in the Schedule," and there is no premium shown for Uninsured Motorists or Underinsured Motorists.  (ECF 26-2, FED0245.)  Additionally, even if UIM coverage was part of the broadened coverage, Federated asserts that the endorsement expressly provides that it does not qualify Enright for UIM coverage under the Who Is An Insured provisions of the UIM coverage part when he is driving a vehicle he owns.  (ECF 26-2, FED0246.)

Federated presented Enright with a "Colorado Commercial Auto Uninsured Motorists Coverage Option Form" in connection with the sale of the Policy [the "UIM Selection-Rejection form].  (Defs.' Ex. 3.)  That form explains that UM/UIM is included at "not less than" the minimum limits required by Colorado law unless either rejected in writing or requested at higher limits than the mandatory minimum.  (*Id.*)  The form

provides "Limit Options" under two separate categories, and Enright made the noted selections.  Enright's signature appears at the bottom of this form, dated May 29, 2013. (*Id.*)  Enright did not reject UIM coverage for himself in connection with this form.

Federated admits the facts in the previous paragraph, but states they are immaterial.  It asserts that any UIM coverage selected on this form is available only to the extent that a person is otherwise entitled to UIM coverage under the Policy in connection with a particular claim.  Federated further asserts that Enright, personally, was not required to reject UIM coverage because he is not a Named Insured.

According to Defendants, as the majority owner and operator of AAA, Enright specifically requested UIM coverage in the amount of $500,000 for himself as an owner/officer and his "family members".  This was the only UIM Selection-Rejection form presented to Enright in connection with his purchase of the Policy.  Federated admits these facts but states they are immaterial.  Federated reiterates that any UIM coverage selected on this form is available only to the extent that a person is otherwise entitled to UIM coverage under the Policy in connection with a particular claim.

III.   ANALYSIS

A.   Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v. Horizon/*

*MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  Once the moving party

meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine

issue for trial on a material matter.  *Concrete Works, Inc. v. City & Cnty. of Denver*, 36

F.3d 1513, 1517 (10th Cir. 1994).  The nonmoving party may not rest solely on the

allegations in the pleadings, but must instead bring forward "specific facts showing that

there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court must view the evidence on summary judgment in the light most

favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*,

195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the

existence of triable issues of fact.  *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th

Cir. 1991).

When the parties file cross motions for summary judgment, the court is "'entitled

to assume that no evidence needs to be considered other than that filed by the parties,

but summary judgment is nevertheless inappropriate if disputes remain as to material

facts.'"  *Atl. Richfield Co.*, 226 F.3d at 1148 (quotation omitted).  Cross motions for

summary judgment must be treated separately – the denial of one does not require the

grant of another.  *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

B.     The Merits of the Motions

1.     Principles of Insurance Contract Construction

Because the present case is grounded on diversity jurisdiction, Colorado law

provides the substantive rules of law which govern this action.  *Blanke v. Alexander*,

152 F.3d 1224, 1228 (10th Cir. 1998).  Under Colorado law, the interpretation of an

insurance policy is a question of law.  *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819

(Colo. 2002).  "An insurance policy is merely a contract that courts should interpret in

line with well-settled principles of contract interpretation."  *Cyprus Amax Minerals Co. v.*

*Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).  The *Cyprus* court explained as to

those principles:

> In undertaking the interpretation of an insurance contract, courts should be
> wary of rewriting provisions, and should give the words contained in the
> contract their plain and ordinary meaning, unless contrary intent is evidenced
> in the policy.  . . . Courts should read the provisions of the policy as a whole,
> rather than reading them in isolation. . . . Courts may neither add provisions
> to extend coverage beyond that contracted for, nor delete them to limit
> coverage.

*Id.* (internal citations omitted).  As with any contract, the terms of the insurance policy

must also be construed to promote the intent of the parties.  *Cary v. United of Omaha*

*Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005).

"[B]ecause of the unique nature of insurance contracts and the relationship

between the insurer and insured, courts construe ambiguous provisions against the

insurer and in favor of providing coverage to the insured.  *Cyprus*, 74 P.3d at 299.  A

provision is ambiguous if it is susceptible of more than one reasonable interpretation.

*Cruz v. Farmers Ins. Exch.*, 12 P.3d 307, 311 (Colo. App. 2000).  "In determining

whether there is an ambiguity in a policy provision, a court must evaluate the policy as a

whole using the generally accepted meaning of the words employed."  *Id.*  "[A] mere

disagreement between the parties regarding the interpretation of the policy does not

create an ambiguity."  *Id.*

Also, "[a]n insurance policy must be construed to meet the reasonable expectations of the insured." *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 803 (Colo. 2007).  Under Colorado law, "there are two general circumstances where the doctrine of reasonable expectations renders exclusionary language unenforceable: (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue; and (2) where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable insured would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain he or she is not." *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1043 (Colo. 2011).  Finally, because insurance contracts are not negotiated contacts but have terms required by legislation or dictated by the insurer, "courts have assumed a 'heightened responsibility' to scrutinize insurance policies for provisions that unduly compromise the insured's interests and have concluded that any provision of an insurance policy which violates public policy and principles of fairness is unenforceable." *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo. 1998).

    2.    <u>Whether Enright Is Entitled to Coverage Under the Policy</u>

        a.    <u>Whether Enright is a Named Insured</u>

I first find that Enright is not a "Named Insured" under the Policy.  The Policy states, "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations."  (Pl.'s App. at 000006; Defs.' Ex. 2 at FED 0219.)  It is undisputed that the Common Policy Declarations of the Policy identify the Named Insured as Triple A.  (Pl.'s App. at 000001; Defs.' Ex. 2 at FED 0002.)  The policy also

includes an "Additional Named Insureds Endorsement", allowing for the addition of persons or entities who will qualify as a "Named Insured" on the policy.  (Pl.'s App. at 000002.)  Neither Enright nor any other individual is included on that endorsement.  (*Id.*)  I further find that the Policy does not contain any provision stating that Enright is a "Named Insured" under the Policy.

Thus, I find that Triple A is the "Named Insured", and when the terms "you" and "your" are used in the policy, they refer to Triple A, not to Enright.

      b.      Whether Enright Is an "Insured" Under the Policy

The Policy distinguishes between the terms "Named Insured" and "insured".  As discussed above it states, and I so find, that Triple A is the "Named Insured" and that "you" and "your" refer to Triple A as the Named Insured.  However, the Policy also contains provisions identifying who may qualify as an "insured" under each coverage part.  These provisions are entitled "Who Is An Insured."  Defendants contend that Enright is an insured under some of these provisions.

I first address the provisions where I find that Enright does not qualify as an insured.  The Business Auto Coverage Form defines who qualifies as "insureds" for automobile liability insurance coverage in the "Who Is An Insured" section.  It states:

SECTION II – LIABILITY COVERAGE

           * * *

1.      Who Is An Insured

        a. You for any covered "auto".

        b. Anyone else while using with your permission a covered "auto" you own, hire or borrow, except:

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(Defs.' Ex. 2 at FED 0220).

I find that the term "You" in the above referenced section 1.a refers to Triple A, as discussed in Section III.B.2.a, *supra*.  I further find that Enright is not entitled to coverage under this section as an employee because the motorcycle he was driving was not a "covered" auto, *i.e,* one owned by Triple A, but was instead a vehicle that was owned by Enright individually.  As discussed in Section II, *supra*, the Policy defines the term "covered auto" for purposes of UIM coverage in Item Two of the business auto declarations by reference to symbol "2A."  (Pl.'s App. 000003; Defs.' Ex. 2 at FED 0214.)  Symbol 2A means "[o]wned autos only.  Only those 'autos' you [Triple A] own. . . ."  (Defs.' Ex. 2 at FED 0254.)  Thus, the term "covered auto" for UIM coverage under the Business Auto Coverage Form includes only those autos owned by Triple A.  To qualify as an insured for UIM coverage under the above cited section, a person must be occupying or using an auto owned by Triple AAA, which Enright was not.  Instead, Enright was operating his personally owned vehicle.

I also find that Enright is not covered as an insured under the endorsement entitled "Colorado Uninsured Motorists Coverage – Bodily Injury".  The endorsement states:

B.     Who Is An Insured

If the Named Insured is designated in the Declarations as:

* * * *

-14-

> 2.    A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
> a. Anyone "occupying" or using a covered "auto" or a temporary substitute for a covered "auto". . . .

(Pl.'s Appx. at 9-10; Defs.' Ex. 2 at FED 0232-233.)

Here, Triple A is designated as a corporation, and Enright is not an insured because he was not occupying a covered auto, *i.e.*, owned by Triple A as discussed above, or a temporary substitute for a covered auto.  Instead, it is undisputed that at the time of his accident, Enright was riding a personal motorcycle that he owned and separately insured under a personal lines policy issued by State Farm.  The accident did not involve Triple A, or any auto owned by Triple A.  Thus, Enright does not qualify as an "insured" for UIM coverage under this section of the Policy.

Defendants also rely on the section of the Colorado Uninsured Motorists Coverage - Bodily Injury endorsement that states:

**B.**    **Who Is An Insured**

If the Named Insured is designated in the Declarations as:

> 1.    An individual, then the following are "insured":
>
> a.    The Named Insured and any "family members."

(Defs.' Ex. 2 at FED 0233.)   I find that this is also not applicable.  As discussed earlier, the Named Insured is Triple A, a corporation, not an individual.

Also cited by Defendants is Form CA-F-93 which is a separate endorsement included under the Business Auto Coverage Part and is entitled, "Uninsured and

Underinsured Motorists Limit of Insurance" ["Limits Endorsement"].  This endorsement

provides in pertinent part as follows:

> Uninsured and Underinsured Motorists Coverage as provided by your
> policy is modified as follows:
>
> 1.   For all directors, officers, partners, or owners of the named
>      insured and their "family members" who qualify as "insureds"
>      under the WHO IS INSURED of the Uninsured and
>      Underinsured Motorists Coverage attached to this policy, the
>      limit of insurance shall apply per "accident" as follows:
>
>      $500,000 Uninsured Motorists
>      $INCLUDED Underinsured Motorists_____This limit of
>      insurance is for each "accident" and is the most we will pay
>      for all damages resulting from any one "accident" or "loss"
>      regardless of the number of directors, officers, owners or
>      family members involved unless otherwise stated in the
>      Uninsured and Underinsured Motorists Coverage attached to
>      this policy.
>
> 2.   For any other person qualifying as "insureds" under the WHO
>      IS AN INSURED provision of the applicable coverage, the
>      limit shown below shall apply per "accident".  If no limit is
>      shown below, no coverage is afforded to any person.
>
> ***

(Defs.' Ex. 2 at FED 0238.)

I agree with Federated that this form also does not provide coverage to Enright.

Form CA-F-93 states the UM/UIM coverage is provided by the endorsement for "all

directors, officers, partners, or owners of the named insured . . . *who qualify as*

*"insureds"* under the WHO IS AN INSURED of the Uninsured and Underinsured Motorist

Coverage attached to this policy . . ." (Defs.' Ex. 2 at FED 0238) (emphasis supplied).    I

previously found that Enright is not entitled to coverage as an insured under the

Uninsured and Underinsured Motorist Coverage.

Defendants nevertheless point out that the Policy's "Drive Other Car Coverage - Broadened Coverage for Named Individuals" endorsement specifically identifies "Mike Enright" as an individually named insured under the Policy.  (Defs.' Ex. 2 at FED 0245.)  The Broadened Coverage endorsement states, in pertinent part, as follows:

> This endorsement modifies insurance provided under the following:
> Business Auto Coverage Form
>
>                     ***
>
> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

(*Id.*)

The Broadened Coverage endorsement then contains a Schedule which lists "Name of Individual" as "Mike Enright".  (Defs.' Ex. 2, FED 0245.)  The Schedule contains a chart listing the following categories:  Liability, Auto Medical Payments, Comprehensive, Collision, Uninsured Motorists, and Underinsured Motorists.  (*Id.*)  The chart says premiums are "$ INCLUDED" for Liability,  Auto Medical Payments, Comprehensive, and Collision.  (*Id.*)  There is no such language for Uninsured Motorists and Underinsured Motorists.  The section describing the Premiums for those categories is blank.  (*Id.*)

The Broadened Coverage endorsement then goes on to state:

> Note -When Uninsured Motorists Coverage is provided at limits higher than the basic limits required by a financial responsibility law, Underinsured Motorists Coverage is included, unless otherwise noted.  If Underinsured Motorists Coverage is provided as a separate coverage, make appropriate entry in the Schedule above.

**A.**     This endorsement changes only those coverages where a premium is shown in the Schedule.

*** 

(Defs.' Ex. 2 at FED 245.)

Federated argues that the Broadened Coverage endorsement does not extend coverage to Enright for two reasons.  First, it asserts that the endorsement does not provide any UIM coverage at all.  Instead, it contains language specifying certain "changes" in the "Business Auto Coverage Form".  Federated points to the very first section of the endorsement which states that the "endorsement changes only those coverages where a premium is shown in the Schedule."  (Def.'s Ex. 2 at FED 0245.) Federated argues that if a premium is not shown in the schedule next to a particular coverage type, then the endorsement does not change that coverage.  (*Id.*)  The "schedule" identifies six different coverage types that could be changed by the endorsement if there is a premium shown next to that coverage type.  (*Id.*)  No premium is shown for Underinsured Motorists Coverage, nor is the word "included" shown for that coverage.  (*Id.*)  Thus, Federated argues that UIM coverage is not changed by the Drive Other Car endorsement on Triple A's policy.

I agree with Federated that no premium is included in the sections of the chart for Uninsured and Underinsured Motorists Limits, which under the Policy language relied on by Federated would preclude coverage for Enright for Underinsured Motorists Coverage. Thus, Federated's interpretation of the endorsement is reasonable.  *See, e.g., Lundgren v. Vigilent Ins. Co.*, 391 N.W.2d 542, 544 (Minn. App. 1986) (no UIM coverage where DOC endorsement "includes no entry or premium charge for underinsured motorists

coverage"); *Mikulay v. The Home Indemnity Co.,* 449 N.W.2d 464, 467 (Minn. App. 1989) (no UIM coverage where "dashes" appeared in the "premium" column of the DOC endorsement next to UIM coverage).

Defendants argue, however, that Federated's argument is unavailing, relying on additional language not cited by Federated.  Thus, the chart relied on by Federated goes on to state at the bottom that "Information required to complete this Schedule, if not shown above, will be shown in the Declaration."  (Defs.' Ex. 2 at FED 245.)  Defendants argue that the Policy's Declarations show that UIM coverage was purchased, at limits set forth in Form CA-F-93 (the UIM Limit of Insurance Endorsement).  (*Id.* at FED 0214, 0238.)  They assert that by its own terms, the Broadened Coverage Endorsement's Schedule imports the information provided in the Policy's Business Autos Declarations— which unequivocally indicates that UIM coverage was purchased—and applies it to Enright individually.

Turning to my analysis, I agree with Federated that the language at the bottom of the schedule that "Information required to complete this Schedule, if not shown above, will be shown in the Declaration", standing alone, does not appear to support Defendants' contention that this language imports the information provided in the Policy's Business Autos Declarations wherein UIM coverage was purchased, and applies it to Enright individually.  Thus, as Federated notes, it appears that when information is "*required* to complete this Schedule" by reference to the Declarations, the Schedule specifically says so.  For example, Federated notes that the endorsement provides Enright with "Liability" and "Auto Medical Payments" coverage when he qualifies as an

insured under the DOC endorsement.  The Schedule specifically says "SEE

DECLARATIONS" for the respective "Limits" of those coverages.  In that instance,

information is "required" to complete the schedule.  Thus, Federated contends that no

confusion or ambiguity is created by the language cited by Defendants.

However, when this language in the schedule is combined with the language of

the Note that follows it, I find that a reasonable insured would believe there is UIM

coverage for Enright, the named individual for whom broadened coverage was obtained.

As discussed previously, it states, "When Uninsured Motorist Coverage is provided at

limits higher than the basic limits required by a financial responsibility law, Underinsured

Motorists Coverage is included, unless otherwise noted."  (Defs' Ex. 2 at FED 0245.)

Here, Defendants have shown that UM coverage is provided by the Policy at limits

higher than the basic $25,000 liability limits required by Colo. Rev. Stat. § 10-4-620;

indeed, the Policy provides for $500,000 of such coverage.  And Defendants assert that

there is nothing in the endorsement or elsewhere in the Policy "otherwise noting" that

UIM coverage is not provided to Enright.  While Federated argues that the Note does not

alter the endorsement's plain language which states that coverages are amended only if

a premium is shown in the Schedule, and that no premium was shown for UM coverage,

I find that this makes the endorsement ambiguous, as it is susceptible to two different

interpretations.  *Cruz*, 12 P.3d at 311.  Accordingly, I must read the provisions against

Federated and in favor of providing coverage to Enright as an insured.  *Cyprus*, 74 P.3d

at 299.

Federated also argues, however, that even if UIM coverage was changed by the Broadened Coverage Endorsement, it still would not provide UIM to Enright.  It argues that the very purpose of the endorsement is to extend coverage only for the named individual's use of non-owned autos.  The endorsement goes on to state:

**C.   Changes In Auto Medical Payments And Uninsured And Underinsured Motorists Coverages**

The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member".

(Defs.' Ex. 2 at FED 0246.)

Federated contends that this provision would amend the "Who Is An Insured" provision of the UIM coverage by adding the individual shown in the schedule – Mike Enright – "while occupying or while a pedestrian struck by any auto you [i.e., Triple A] don't own except: any auto owned by that individual * * *."  Under this language, Federated asserts that Enright would be added as an "insured" while occupying an auto that Triple A does not own, except an auto owned by Mr. Enright.  He would also be added as an insured while a pedestrian struck by any auto that Triple A does not own, except an auto owned by Enright.  He would not be entitled to UIM coverage if he was "struck by" such vehicles.  Although the motorcycle that Enright was occupying at the

-21-

time of his accident is not owned by Triple A, the "except" clause applies according to Federated because it is an auto owned by Enright.

Defendants, on the other hand, read the above clause in the Broadened Coverage Endorsement to mean that Enright is entitled to UIM coverage because he was "struck by" an auto that neither he nor AAA owns, *i.e.*, the auto driven by Kayne. They argue that this interpretation is fully supported by the Policy language due to the lack of commas between the words "occupying" and "or", and between the words "by" and "any".  That is, Defendants assert that if the clause read, "Any individual named in the Schedule and his or her 'family members' are 'insureds' while 'occupying**,** or while struck by**,** any 'auto' you don't own except:  Any 'auto' owned by that individual or by any family member" (commas added and emphasized in bold face and underlying), it might support Federated's interpretation.  But they note that the Court cannot read punctuation into the Policy that does not exist.  *See Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1051 (Colo. 2011) ("policy 'terms should be read in the sense in which the insurer had reason to believe they would be interpreted by the ordinary reader and purchaser.'") (quotation omitted).

I agree with Defendants that the clause relied on by Federated is ambiguous, as it can be read to support both Federated's and the Defendants' position.  This was addressed by another district court in this Circuit in the case of *State Farm Auto Ins. Co. v. Clifford*, No. CIV-05-0259-F, 2005 WL 2210217 (W.D. Okla. Sept. 12, 2005).  There, cross motions for summary judgment were filed regarding whether Clifford, who was struck by a vehicle while operating a motorcycle which he owned with his wife, was

entitled to UM/UIM coverage under a business auto policy issued to his company, A+

Production Painting.  The Policy contained the identical policy language I am asked to

construe in the Broadened Coverage endorsement, which deleting spacing and

quotations, reads as follows:

> Any individual named in the Schedule and his or her family members are
> insured while occupying or while a pedestrian when being struck by any
> auto you don't own except: Any auto owned by that individual or by any
> family member.

The parties in that case made the identical arguments here.  State Farm argued

that there was no coverage because Clifford came within the exception clause which

excepted any auto owned by that individual or by any family members.  *Clifford*, 2005

WL 2110217, at *1.  State Farm interpreted this as applying to the vehicle Clifford, as

"that individual," was occupying at the time of the collision.  Since he owned that vehicle,

State Farm argued that the exception clause applies.  *Id.*  Clifford and his company A+

argued, on the other hand, that the exception clause applied to the vehicle which struck

Clifford.  Thus, they argued that "the exception clause operates if the vehicle which

struck Mr. Clifford was owned by Mr. Clifford as "that individual," (or by Gina Clifford, or

by one of the Clifford's family members)."  *Id.* at *2.  "Because Mr. Duty, an unrelated

driver, collided with Mr. Clifford, Mr. Clifford argues that the exception does not apply,

leaving him with UM coverage as a scheduled individual under the endorsement.

In addressing these arguments, the court noted that the case "illustrates that

drafters of insurance policies, even while attempting to avoid legalese by using simple

English, are fully capable of writing nearly impenetrable policy language."  *Clifford*, 2005

WL 2210217, at *2.  It then found that the relevant language was "impossible to

diagram", explaining:

> it leaves the phrase "while occupying" dangling without any explanation of
> what is being occupied. Although the phrase "while occupying" presumably
> refers to while occupying a vehicle of some sort, this phrase's lack of an object
> leaves the reader struggling to understand which phrases modify which
> objects in the passage as a whole. The absence of commas makes it even
> more difficult to understand where phrases stop and start and to what they
> pertain. This general lack of clarity results in at least two plausible
> interpretations concerning to which vehicle the exception clause pertains.

2005 WL 2210217, at *3.  The court thus found that the policy was ambiguous because

the endorsement was susceptible to at least two plausible meanings.[1]

The *Clifford* court then went on to address whether Clifford's proposed

interpretation of the policy's UM coverage and his expectation of coverage was

objectively reasonable.  2005 WL 2210217, at *4.  The court found that it was for several

reasons, one of which was that "State Farm's interpretation of the endorsement requires

more linguistic gymnastics than does Mr. Clifford's interpretation."  *Id*.  It also noted that

"the endorsement is entitled 'BROADENED COVERAGE FOR NAMED INDIVIDUALS'

(emphasis added)", "it specifically names Paul Clifford and Gina Clifford as the two

individuals covered by the endorsement", and "states that it covers '[a]ny individual

*named* in the [s]chedule ....' (emphasis added)."  Further, the court found that Clifford's

---

[1] It also found, among other things, that  that the meanings of "that individual" and of "any family member" are unclear.  *Id*.  Thus, the court found "'that individual' may refer to: 1) the individual occupying the vehicle which is struck; 2) the previously referenced "you" (creating other problems); or 3) the individual who owns the car which struck the car the insured was occupying."  *Id*.  Indeed, the court noted that the "endorsement does not clarify that 'any family member' refers to family members of 'that individual,' thus, at least theoretically, 'family member' could refer to anyone in the world because everyone is a member of some family."  *Id*.  While *Clifford* noted that result would be absurd, it mentioned it "to illustrate the passage's overall lack of clarity."  *Id*.

"proposed interpretation of the endorsement as covering him so long as the car which struck him is not owned by him (or by his wife or by one of his family members) is an interpretation which makes sense", and his "interpretation of the exception clause is one which the legal rules of insurance policy construction support" as they "provide that ambiguous words of exclusion, such as the exception clause portion of this endorsement, should be construed against the insurer." *Id.* The court concluded, "[t]he fact that legal and policy considerations support Mr. Clifford's interpretation of the policy is evidence of the objective reasonableness of Mr. Clifford's expectation of coverage." *Id.* Thus, the court granted Clifford's motion for summary judgment, and denied State Farm's motion for summary judgment. *Id.* at *5. The Tenth Circuit affirmed *Clifford* "for substantially the same reasons as set forth in the district court's order", finding that the district court's holding was consistent with Oklahoma law and policy governing insurance coverage disputes. *State Auto Ins. Co. v. Clifford*, 195 F. App'x 786, 788-89 (10th Cir. 2006).

I adopt the *Clifford* analysis, finding it applicable here for the same reasons as articulated in that case. Accordingly, I find this endorsement must be construed in favor of Defendants and coverage for Enright and against Federated. I also find that this is consistent with the doctrine of reasonable expectations. Defendants' Motion for Partial Summary Judgment is thus granted as to this issue, and Federated's Motion for Summary Judgment is denied.

Since I have found in favor of UIM coverage on behalf of Enright, I need not address Defendants' argument that Colorado public policy mandates that Triple A's

Policy provide UIM Coverage to Enright while using his own motorcycle.  I also do not

address Defendants' argument that UIM coverage is provided by operation of

law either because Enright was not provided the personal UIM coverage he requested or

he did not reject personal UIM coverage in writing.

IV.     <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Defendants' Cross-Motion for Partial Summary Judgment (ECF

No. 27), seeking judgment in favor of Defendants on the question of Michael Enright's

entitled to UIM coverage under the Policy, is **GRANTED**.  It is

FURTHER ORDERED that Plaintiff Federated Mutual Insurance Company's

Motion for Summary Judgment (ECF No. 23) is **DENIED**.  Finally, it is

ORDERED that the parties shall file a joint report by **Friday, April 1, 2016**, as to

the status of the remaining claims/counterclaims in the case.

Dated:  March 17, 2016

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge